UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>RHONDELL WILLIAMS,<br><br>*Defendant*. | Criminal Action No. 25 - 112 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Defendant Rhondell Williams was charged in a three-count indictment in connection with his alleged unlawful possession of a ghost gun. ECF No. 1. He has moved to dismiss Count I, unlawful possession of ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1), arguing that the statute is unconstitutional on its face under *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). ECF No. 20.[1] The matter is fully briefed. ECF Nos. 20, 24. For the following reasons, the court will deny Mr. Williams's motion.

**I.   FACTUAL BACKGROUND**

On April 4, 2025, officers of the D.C. Metropolitan Police Department ("MPD") were conducting a routine patrol on the 2600 block of Martin Luther King, Jr. Avenue, SE.[2] While

---

[1] The motion's title seeks dismissal of "the indictment," but the body of the motion addresses only Count I. *See* ECF No. 20. The court does not address Counts II and III of the indictment, which charge violations of District of Columbia law. *See* ECF No. 1.

[2] Unless otherwise noted, the court draws the facts from the *Gerstein* affidavit filed in the criminal case against Mr. Williams in the Superior Court of the District of Columbia arising out of the same incident. *See United States v. Williams*, No. 2025-CF2-3747 (D.C.). The government dismissed the Superior Court charges shortly after a federal grand jury indicted Mr. Williams. *Id.*; ECF No. 15, at 5.

passing Pomeroy Road, SE, around 6:15 p.m., one officer, Sergeant Possinger, observed Mr. Williams standing in the street holding an open bottle of tequila. The officers exited their vehicles and approached Mr. Williams, who had taken a seat on the front steps of his apartment building. Sergeant Possinger instructed Mr. Williams to walk down the steps to speak with them.

Once Mr. Williams was at the bottom of the steps, Sergeant Possinger placed him in handcuffs and attempted to walk him away from his family members, who had gathered nearby. Mr. Williams then locked out his legs and went limp, causing officers to drag him away from the steps. Sergeant Possinger advised those on scene that Mr. Williams was under arrest for possession of an open container of alcohol ("POCA").

During a search incident to arrest, Sergeant Possinger identified a crossbody bag under Mr. Williams's partially zipped jacket. Inside the bag, he discovered a Polymer 80 9-millimeter semiautomatic "ghost gun," which had no serial number. The gun was loaded with five rounds in a ten-round-capacity magazine.

The officers arrested Mr. Williams and, the following day, he was charged in the Superior Court of the District of Columbia with unlawful possession of a firearm, in violation of D.C. Code § 22-4503(a)(1), and carrying a pistol without a license, in violation of D.C. Code § 22-4504(a)(1). *United States v. Williams*, No. 2025-CF2-3747 (D.C.). On April 17, a federal grand jury indicted Mr. Williams with one count of unlawful possession of ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1); one count of unlawful possession of a firearm (prior conviction), in violation of D.C. Code § 22-4503(a)(1); and one count of possession of a prohibited weapon (felony) for possession of a "ghost gun," in violation of D.C. Code § 22-4514(a) and (c)(1), with an enhancement for a prior felony conviction pursuant to D.C. Code § 22-4514(c)(3). ECF No. 1.

Mr. Williams has two prior felony convictions under District of Columbia law for possessing a pistol without a license and unlawfully possessing a firearm as a convicted felon. ECF No. 1, at 1-2 (citing *United States v. Williams*, No. 2006-CF2-23110 (D.C.), and *United States v. Williams*, 2017-CF2-13226 (D.C.)); ECF No. 24, at 2.

## II.   DISCUSSION

The Second Amendment recognizes "an individual right to keep and bear arms for self-defense." *Bruen*, 597 U.S. at 17. "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). In *Bruen*, the Supreme Court clarified the scope of conduct that may be regulated consistent with the Second Amendment, explaining that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. A regulation passes constitutional muster, however, if the government demonstrates that the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

*Bruen* put an end to a two-step framework that federal courts had applied in the years following *Heller* and *McDonald v. Chicago*, 561 U.S. 742 (2010). Under that framework, if historical evidence established that the challenged law regulated conduct outside the original scope of the Second Amendment right, courts held that the conduct was not protected. *Bruen*, 597 U.S. at 18. But if the historical evidence was unclear or suggested that the conduct was not categorically unprotected, the courts would weigh a law's burden against the benefit it offered. *Id.* at 18-19. The *Bruen* Court rejected this framework as "one step too many." *Id.* at 19. The Court clarified that *Heller* and *McDonald*'s methodology centered on constitutional text and history and "did not invoke any means-end test such as strict or intermediate scrutiny" or any "'interest-balancing inquiry.'" *Id.* at 22 (quoting *Heller*, 554 U.S. at 634). Thus, the Court explained, "[t]he test that

3

we set forth in *Heller* and apply today requires courts to assess [only] whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

Mr. Williams argues that Section 922(g)(1), which imposes a lifelong ban on felons possessing firearms and ammunition, does not survive *Bruen* because felons fall within "the people" protected by the Second Amendment and the government cannot show a historical tradition of felon disarmament in the founding era. ECF No. 20, at 9-24. Mr. Williams also points to several decisions from other courts accepting similar arguments after *Bruen*. *Id.* at 5-7.

But as courts in this district have consistently held since *Bruen*,[3] Mr. Williams's arguments are foreclosed by D.C. Circuit precedent. In *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019), a pre-*Bruen* case, examination of the Nation's historical tradition of firearms regulation led the Court to reject the argument that previously convicted felons have a right to bear arms. *Id.* at 158-60. The Court "look[ed] to the public understanding of the right at [the time the Second Amendment was ratified] to determine if a convicted felon would fall outside the scope of its protection." *Id.* at 158. After determining that capital punishment for felonies was "'ubiquit[ous]'" and the "'standard penalty for all serious crimes,'" the Court reasoned that it was "difficult to conclude that the public, in 1791, would have understood someone facing death and

---

[3] *See* Order at 8 n.2, *United States v. Sargent*, No. 24-CR-447 (D.D.C. May 21, 2025) (collecting cases); *see also United States v. Turman*, No. 23-CR-171, 2024 WL 6111873, at *1-8 (D.D.C. Dec. 2, 2024); *United States v. Powell*, No. 22-CR-293, 2024 WL 4502226, at *3 (D.D.C. Oct. 16, 2024); *United States v. Lewis*, No. 24-CR-144, 2024 WL 3581347, at *2 (D.D.C. July 29, 2024); *United States v. Richardson*, No. 23-CR-200, 2024 WL 402948, at *3, n.2 (D.D.C. Feb. 2, 2024); *Baisden v. Garland*, No. 19-CV-3105, 2023 WL 7695744, at *5 (D.D.C. Nov. 15, 2023).

estate forfeiture to be within the scope of those entitled to possess arms." *Id.* at 158 (alteration in original) (quoting *Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in judgment)).

Mr. Williams contends that *Medina* has been overruled or abrogated by *Bruen*. ECF No. 20, at 24-31. Not so. While *Medina* set forth the now-rejected two-step framework as its legal standard, it did not engage in the "means-end scrutiny" or "interest-balancing inquiry" that the *Bruen* Court discarded. *See* 913 F.3d at 161 ("Because the claim fails at the first step . . . , we need not reach the second step."). The *Bruen* Court specified that the two-step framework was "one step too many," but it held that the first step was "broadly consistent with *Heller*" and emphasized that the test it was applying—requiring "courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding"—was the same "test that [the Court] set forth in *Heller*." 597 U.S. at 19, 26.

The *Medina* Court solely examined "tradition and history" to establish that a "felony conviction removes one from the scope of the Second Amendment," and it looked to *Heller* for guidance in doing so. 913 F.3d. at 158, 160. As another court in this district has explained, the *Bruen* Court's "refinement of the historical method applied in *Medina* does not 'clearly dictate a departure' from *Medina* such that this Court could conclude it had been overruled." *United States v. Richardson*, No. 23-CR-200, 2024 WL 402948, at *4 (D.D.C. Feb. 2, 2024) (quoting *Bahlul v. United States*, 77 F.4th 918, 927 (D.C. Cir. 2023)).[4]

---

[4] Mr. Williams takes issue with the *Medina* Court's historical analysis and its reliance on historical sources that would be insufficient under *Bruen*. ECF No. 20, at 4-5, 25-28. At most, he has identified "'tension' between *Medina* and *Bruen*, which is not enough for this Court to disregard a 'prior factually indistinguishable decision.'" *Richardson*, 2024 WL 402948, at *4 (quoting *Angelo v. District of Columbia*, 648 F. Supp. 3d 116, 129 (D.D.C. 2022)).

Mr. Williams also attacks the *Medina* Court's reliance on a "responsible citizen" theory that the Supreme Court recently rejected in *United States v. Rahimi*, 602 U.S. 680 (2024). ECF No. 20, at 10-11. In *Medina*, the D.C. Circuit noted that "felons are not among the law-abiding, responsible citizens entitled to the protections of the Second Amendment." 913 F.3d at 154. Mr. Williams argues that, in *Rahimi*, the Supreme Court "reject[ed] the Government's contention that Rahimi could be disarmed simply because he is not 'responsible.'" 602 U.S. at 701; *see* ECF No. 20, at 11. However, *Medina*'s holding was based not on the line between "responsible" and "irresponsible" citizens, but instead on the line between those with felony convictions and those without. *See* 913 F.3d at 160. Indeed, the D.C. Circuit "expressly declined to apply the 'virtuous citizen' iteration of that [responsible citizen] principle." *United States v. Turman*, No. 23-CR-171, 2024 WL 6111873, at *3-4 (D.D.C. Dec. 2, 2024). This court thus concludes that it is bound by *Medina*'s holding that Section 922(g)(1) is consistent with the Second Amendment's text and historical understanding.

Rather than undermine *Medina*, the Supreme Court's reasoning in *Rahimi* lends further support to *Medina*'s conclusion. The Supreme Court affirmed that the Nation's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 690; *id.* at 698 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."). That analysis applies with equal force to those previously convicted of a felony. Moreover, the *Rahimi* Court repeated *Heller*'s statement that felon-in-possession laws are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626, 627, n.26). "These statements were not made casually or

6

inadvertently." Order at 11 n.4, *United States v. Sargent*, No. 24-CR-447 (D.D.C. May 21, 2025).

Thus, *Rahimi* further supports the court's conclusion that Section 922(g)(1) is constitutional.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Williams's motion to dismiss the indictment, ECF No. 20, is **DENIED**.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   September 12, 2025